JOHN C. CRUDEN
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice

HENRY FRIEDMAN
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Telephone (202-514-5268); Fax (202-616-2427)
Email: henry.friedman@usdoj.gov

(Additional Attorneys for United States Listed On Next Page)


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 15-00173 DKW-BKM |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | **CONSENT DECREE** |
| HAWAII | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

FLORENCE T. NAKAKUNI
United States Attorney
U.S. Attorney's Office
District of Hawaii

THOMAS A. HELPER
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541- 2850, Fax: (808) 541- 3752

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE …………………………………...-3-

II.     APPLICABILITY……………………………………………….-3-

III.    DEFINITIONS…………………………………………………...-5-

IV.     CIVIL PENALTY……………………………………………..-7-

V.      SUPPLEMENTAL ENVIRONMENTAL PROJECT………………...-8-

VI.     REPORTING REQUIREMENTS .........................................-14-

VII.    STIPULATED PENALTIES ..............................................-16-

VIII.   FORCE MAJEURE .........................................................-22-

IX.     DISPUTE RESOLUTION .................................................-24-

X.      INFORMATION COLLECTION AND RETENTION ........................-27-

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS...............-30-

XII.    COSTS .........................................................................-32-

XIII.   NOTICES ......................................................................-32-

XIV.    EFFECTIVE DATE ........................................................-34-

XV.     RETENTION OF JURISDICTION ......................................-34-

XVI.    MODIFICATION ...........................................................-35-

XVII.   TERMINATION ............................................................-35-

XVIII.  PUBLIC PARTICIPATION ..............................................-36-

XIX.    SIGNATORIES/SERVICE.................................................................-37-

XX.     INTEGRATION......................................................................-37-

XXI.    FINAL JUDGMENT ...............................................................-38-

APPENDIX .....................................................................................-38-

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant City and County of Honolulu ("Defendant"), violated Sections 111, 112 and 502 of the Clean Air Act, 42 U.S.C. §§ 7411, 7412 and 7661a  ("Act").

WHEREAS, Defendant owns and operates the Kapa'a and Kalaheo Sanitary Landfill ("Landfill") located on the island of Oahu in Hawaii.

WHEREAS, the Complaint alleges that Defendant violated the Standards of Performance for New Stationary Sources ("NSPS") and National Emission Standards for Hazardous Air Pollutants ("NESHAP") regulations promulgated pursuant to Sections 111 and 112 of the Act, respectively, for existing municipal solid waste landfills.  The Complaint further alleges that Defendant violated the NSPS regulations by failing to timely submit a design plan for a gas collection and control system ("GCCS") to EPA, and failing to timely install and operate a GCCS.  The Complaint further alleges that, as a result of failing to timely construct and operate a GCCS, Defendant emitted approximately 6,875 tons of uncontrolled non-methane organic compounds ("NMOCs") over the course of approximately ten years.  NMOCs are comprised of Volatile Organic Compounds and Hazardous Air Pollutants.  The Complaint further alleges that Defendant

violated the NESHAP regulations by failing to timely comply with the NSPS

regulations as described in this Paragraph and by failing to timely develop a

startup, shutdown and malfunction ("SSM") plan.  The Complaint further alleges

that Defendant violated Hawaii's Title V permitting regulations by failing to timely

submit a complete application for a Title V covered source permit.

Whereas, the Parties agree that, during the period of negotiations of this

Consent Decree, Defendant submitted a GCCS design plan approved by EPA for

the Landfill, installed and commenced operation of the GCCS, developed an SSM

plan, and submitted a complete application for a Title V covered source permit.

WHEREAS, Defendant does not admit any liability to the United

States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this

Consent Decree finds, that this Consent Decree has been negotiated by the Parties

in good faith and will avoid litigation between the Parties and that this Consent

Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the

adjudication or admission of any issue of fact or law and with the consent of the

Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action,

pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42

U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to

Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c),

and 1395(a), because the violations alleged in the Complaint are alleged to have

occurred and Defendant resides in this judicial district.  For purposes of this

Decree, or any action to enforce this Decree, Defendant consents to the Court's

jurisdiction over this Decree and any such action and over Defendant and consents

to venue in this judicial district.

2.     For purposes of this Consent Decree only, Defendant agrees that the

Complaint states claims upon which relief may be granted pursuant to Section

113(b) of the of the Act, 42 U.S.C. § 7413(b).

## II.  APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon

the United States and upon Defendant and any successors, assigns, or other entities

or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Facility, whether in

compliance with the procedures of this Paragraph or otherwise, shall relieve

Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 9, the United States Attorney for the District of Hawaii, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all managers whose duties might reasonably include the management of implementation of the work required under this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. <u>DEFINITIONS</u>

7.     Terms used in this Consent decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Complaint" shall mean the complaint filed by the United States in this action;

b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

c.     "Current Permit" shall mean Covered Source Permit (CSP) No. 0708-01-C, Kapaa and Kalaheo Sanitary Landfills, dated June 15, 2011;

d.     "Date of Lodging" shall be the date upon which this Consent Decree is filed with the Court as part of a Notice of Lodging, as recorded on the Court's docket, and shall precede both the public comment period required by this Decree and a Motion to Enter the Decree.

e.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall

run until the close of business of the next business day;

      f.    "Defendant" shall mean the City and County of Honolulu, Hawaii, named in the Complaint;

      g.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

      h.    "Effective Date" shall have the definition provided in Section XIV;

      i.    "Facility" shall mean the Kapa'a and Kalaheo Sanitary Landfill, located on the island of Oahu, in Hawaii.

      j.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

      k.    "Parties" shall mean the United States and the Defendant;

      l.    "SEP Construction Completion" shall mean the Defendant has completed installation of all photovoltaic modules on all buildings and sites identified in the Appendix and has commenced power generation from such photovoltaic modules;

      m.    "SEP Completion" shall mean that the Supplemental Environmental Project described in Section V of this Consent Decree has been in operation at least three years after SEP Construction Completion and has generated

the SEP Energy Output Requirement of at least 15,056 megawatt hours ("MWh")

of energy;

        n.    "SEP Energy Output Requirement" shall mean the generation

of at least 15,056 MWh of energy;

        o.    "Section" shall mean a portion of this Decree identified by a

roman numeral;

        p.    "State" shall mean the State of Hawaii.

        q.    "United States" shall mean the United States of America, acting

on behalf of EPA.

## IV.  CIVIL PENALTY

8.    Within 45 days after the Effective Date of this Consent Decree,

Defendant shall pay the sum of $875,000 as a civil penalty, together with interest

accruing from the Effective Date, at the rate specified in 28 U.S.C. § 1961.

9.    Defendant shall pay the civil penalty due to the United States by

FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice, in

accordance with written instructions to be provided by the Financial Litigation

Unit of the U.S. Attorney's Office for the District of Hawaii to Defendant

following lodging of the Consent Decree.  At the time of payment, Defendant shall

send a copy of the EFT authorization form and the EFT transaction record,

together with a transmittal letter, to the United States in accordance with Section

XIII (Notices) of this Consent Decree; by email to

acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH 45268.

The transmittal letter shall state that the payment is for the civil penalty owed

pursuant to the Consent Decree in United States of America v. City and County of

Honolulu, Hawaii and shall reference the civil action number and DOJ case

number 90-5-2-1-09044/1.  Defendant shall not deduct any penalties paid under

this Consent Decree pursuant to this Section or Section VII (Stipulated Penalties)

in calculating its federal income tax.

## V.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

10.    Defendant shall implement the SEP described in this Paragraph.

Defendant shall install, or cause to be installed, a photovoltaic system at

Defendant's waste-to-energy facility, the H-POWER facility ("H-POWER"),

located at 91-174 Hanua Street, Kapolei, Hawaii 96707.  Defendant shall install

photovoltaic modules on at least 261,857 square feet of buildings and open space

area at H-POWER identified in the map attached hereto as the Appendix.  The

aggregate kilowatts-peak (nameplate DC power rating) of the SEP shall be at least

3.089 megawatts.  Defendant may use consultants and/or contractors in planning and implementing the SEP.  Defendant shall achieve SEP Construction Completion by June 2020.

11.     Defendant shall achieve SEP Completion by operating the SEP for at least three years after SEP Construction Completion and generating the SEP Energy Output Requirement of at least 15,056 MWh of energy with the SEP.

12.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

        a.      that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the total of eligible SEP costs to implement the SEP is at least $16,054,974;

        b.      that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

        c.      that the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

        d.     that Defendant has not received and will not receive credit for the SEP in any other enforcement action;

        e.     that Defendant will not receive any reimbursement for any portion of the SEP from any other person;

        f.     that it is not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP. Defendant further certifies that, to the best of its knowledge and belief after reasonable inquiry, there is no such open federal financial transaction that is funding or could be used to fund the same activity as the SEP, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA within two years of the Effective Date (unless the project was barred from funding as statutorily ineligible).  For the purposes of this certification, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired; and

        g.     that Defendant has not and will not use any air emission reductions generated by this SEP in any emissions trading, permitting, netting or offset programs.

13.     As required in Section VI of this Consent Decree, Defendant shall report on the progress of SEP implementation, and provide additional information regarding the SEP in annual reports.

14.     In each annual report following SEP Construction Completion, Defendant shall include the following information:

a.     a detailed description of the SEP as constructed (initial annual report only);

b.     a description of any problems encountered in contracting for and/or constructing the SEP and solutions thereto (initial annual report only);

c.     an itemized list of all eligible SEP costs expended;

d.     a description of the SEP energy generated (in MWh) and its disposition (*e.g.,* on-site and/or exported to grid) at H-POWER; and

e.     a description of the terms of the standard interconnection agreement reached with Hawaiian Electric Company, Inc. ("HECO"), regarding the photovoltaic energy power generated at H-POWER.  (Defendant will not be entering into any other energy agreement with HECO relating to this SEP.)

15.     Within 30 days of SEP Completion, Defendant shall submit a SEP Completion Report to the United States in accordance with Section XIII of this Consent Decree (Notices).  The SEP Completion Report shall contain the

following information:

      a.     a detailed description of the SEP as implemented;

      b.     a description of any problems encountered in completing the SEP and the solutions thereto;

      c.     a description of the energy generated (in MWh) by the SEP for the three-year period following SEP Construction Completion;

      d.     an itemized list of all eligible SEP costs expended;

      e.     a projection of the energy generated (in MWh/yr) over the next 12 years and its value;

      f.     certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

      g.     a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions at power plants, if feasible).

16.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's SEP Completion Report.

17.     After receiving the SEP Completion Report, the United States shall notify Defendant in writing whether or not Defendant has satisfactorily completed

the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VII of this Consent Decree.

18.     Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section IX of this Decree (Dispute Resolution).  No other disputes arising under this Section shall be subject to Dispute Resolution.

19.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 25.

20.     Any public statement, oral or written, in print, film, or other media, made by Defendant during the time period that this Consent Decree is in force making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States of America v. City and County of Honolulu, Hawaii, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

21.     For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in

-13-

performing the SEP.

## VI.  <u>REPORTING REQUIREMENTS</u>

22.     Defendant shall submit the following reports and notifications:

a.     A SEP Completion Report pursuant to Paragraph 15 of this Consent Decree.

b.     On an annual basis after lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII, Defendant shall submit an annual report via email or CD for the preceding year that shall include the status of implementation of the measures required by this Consent Decree; problems encountered or anticipated, together with implemented or proposed solutions; reports to state agencies; a discussion of Defendant's progress in satisfying its obligations in connection with the SEP under Section V of this Decree including, at a minimum, a narrative description of activities undertaken; and the status of any construction or compliance measures.  EPA reserves the right to request additional or follow-up information.

c.     The annual report described in the preceding Paragraph shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the non-compliance's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such non-compliance.

-14-

If the cause of non-compliance cannot be explained at the time the report is due, Defendant shall so state in the report.  If the cause of the non-compliance is subsequently determined, Defendant shall update and re-submit the report within 30 Days of the Day Defendant became aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

23.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the Hawaii Department of Health – Clean Air Branch orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

24.     All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

25.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

-15-

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing and willful submission of a materially false statement.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

26.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

28.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree, as specified below, unless excused under

Section VIII (Force Majeure).

29. <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late.

30. <u>SEP Implementation</u>.

a. If Defendant fails to timely and satisfactorily achieve SEP Construction Completion as set forth in Paragraph 10 above, Defendant shall pay stipulated penalties, upon written demand from EPA, in the following amounts for each day SEP Construction Completion remains incomplete:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 7th Day |
| $15,000 | 8th through 21st Day |
| $25,000 | 22nd through 30th Day |
| $35,000 | Greater than 30 Days |

b. If Defendant timely and satisfactorily achieves SEP Construction Completion, and operates the SEP for at least three years, but fails to generate the SEP Energy Output Requirement (15,056 MWh) within three years of SEP Construction Completion, Defendant shall pay stipulated penalties, upon

-17-

written demand from EPA, in the following amounts for the corresponding

percentage failure to achieve the SEP Energy Output Requirement:

Percentage Failure to Achieve the SEP Energy Output Requirement

| | |
|---|---|
| $50,000 | 1.0 - 10.0% |
| $100,000 | 10.1 - 20.0% |
| $500,000 | 20.1 - 30.0% |
| $1,000,000 | 30.1 - 40.0% |
| $2,000,000 | 40.1 - 50.0% |
| $3,000,000 | 50.1 - 60.0% |
| $4,000,000 | 60.1 - 70.0% |
| $5,000,000 | 70.1 - 80.0% |
| $6,000,000 | 80.1 - 90.0% |
| $7,000,000 | 90.1 - 99.9% |

      c.      If Defendant timely and satisfactorily achieves SEP

Construction Completion, but fails to operate the SEP for at least three years

following SEP Construction Completion, Defendant shall pay a stipulated penalty

in the amount of $7,000,000.

      d.      If Defendant fails to timely and satisfactorily achieve SEP

Construction Completion or SEP Completion as set forth in Paragraphs 10 or 11

above, the United States may elect to terminate the SEP if it determines that

Defendant is not making a good faith effort to satisfactorily complete the SEP.  In

addition, if at any time the United States determines that Defendant has abandoned

the SEP, it may terminate the SEP.  The United States shall provide written notice

of SEP termination to Defendant.  If the United States terminates the SEP,

Defendant shall be liable for a lump sum stipulated penalty of $7,000,000, less any

amount that Defendant has paid under Paragraphs a., b. and/or c.  If Defendant

pays a termination penalty under this Paragraph, it shall not be liable for stipulated

penalties under Paragraphs a. b. and/or c.  Any sums already paid under Paragraph

a., b. and/or c. shall be credited against the lump sum stipulated penalty due under

this Paragraph.

     31.   <u>Delays in Submission of Reports</u>.  The following stipulated penalties

shall accrue per violation per Day for each failure to timely submit a report subject

to a deadline under this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 30th Day |
| $1,500 | 31st through 60th Day |
| $2,500 | 61st Day and beyond |

     32.   Except as provided in Paragraphs 30.b., 30.c. and 30.d. above,

stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33.     Defendant shall pay any stipulated penalty within 45 Days of receiving the United States' written demand.

34.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35.     Upon receipt of the United States' written demand for payment of a stipulated penalty, the Defendant may dispute its liability or such stipulated penalty pursuant to Section IX (Dispute Resolution).  Pending resolution of such dispute, stipulated penalties continue to accrue if the obligation at issue has not been met and interest on any unpaid penalties accrue pursuant to the terms of Paragraph 38 provided however, that Defendant may argue to the Court that stipulated penalties and interest should not run after the matter has been fully briefed and submitted to the Court, and provided that the United States can argue to the contrary.  Upon completion of dispute resolution, any stipulated penalties that are ultimately determined to be due, plus interest as applicable, shall be paid within 45 Days of

EPA's written decision, or, if applicable, any Court order.

36.    If any Party appeals a District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

37.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

38.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

39.    Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of

Sections 111 and/or 112 of the Clean Air Act, or its implementing regulations, or the Current Permit, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.  FORCE MAJEURE

40.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

41.     If any force majeure event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, Defendant shall provide written notice to EPA within 14 days of when Defendant first knew that the event might cause a delay.  The notice shall include an explanation and description of the

reasons for the delay; the anticipated duration of the delay; all actions taken or to

be taken to prevent or minimize the delay; a schedule for implementation of any

measures to be taken to prevent or mitigate the delay or the effect of the delay; and

Defendant's rationale for attributing such delay to a force majeure event if it

intends to assert such a claim.  Defendant shall include with any notice all

available documentation supporting the claim that the delay was attributable to a

force majeure.  Failure to comply with the above requirements shall preclude

Defendant from asserting any claim of force majeure for that event for the period

of time of such failure to comply, and for any additional delay caused by such

failure.

42.    If EPA agrees that the delay or anticipated delay is attributable to a

force majeure event, the time for performance of the obligations under this Consent

Decree affected by the force majeure event will be extended by EPA for such time

as is necessary to complete those obligations.  An extension of the time for

performance of the obligations affected by the force majeure event shall not, of

itself, extend the time for performance of any other obligation.  EPA will notify

Defendant in writing of the length of the extension, if any, for performance of the

obligations affected by the force majeure event.

43.    If EPA does not agree that the delay or anticipated delay has been or

-23-

will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

44.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraph 40 and 41, above.  If the Court agrees that the event was a force majeure event, the dates for performance shall be adjusted to reflect the time the Court determines to be appropriate pursuant to the Dispute Resolution process, and the modified dates shall be the basis for determining compliance with this Consent Decree, including for purposes of Section VII (Stipulated Penalties).

## IX.  DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's

failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

46.   Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

47.   Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

48.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

49.     <u>Judicial Dispute Resolution</u>.  Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 60 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

51.     <u>Standard of Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 49, Defendant shall have the burden of demonstrating that its position complies with this Consent Decree and that it is entitled to relief under the applicable principles of law.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and Defendant reserves the right to oppose this position.

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.  <u>INFORMATION COLLECTION AND RETENTION</u>

53.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials,

to:

        a.     monitor the progress of activities required under this Consent

Decree;

        b.     verify any data or information submitted to the United States in

accordance with the terms of this Consent Decree;

        c.     obtain samples and, upon request, splits of any samples taken

by Defendant or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and

similar data; and

        e.     assess Defendant's compliance with this Consent Decree.

54.     Upon request, Defendant shall provide EPA or its authorized

representatives with splits of any samples taken by Defendant.  Upon request, EPA

shall provide Defendant with splits of any samples taken by EPA.

55.     Until three years after the termination of this Consent Decree,

Defendant shall retain, and shall instruct its contractors and agents to preserve, all

non-identical copies of all documents, records, or other information (including

documents, records, or other information in electronic form) in its or its

contractors' or agents' possession or control, or that come into its or its

contractors' or agents' possession or control, and that relate in any manner to

Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

56.     In response to such a request from the United States, Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege, deliberative process privilege, attorney work-product doctrine, or any other privilege or doctrine recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

57.     Defendant may also assert that information required to be provided

under this Section is protected as Confidential Business Information ("CBI") under

40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI,

Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

58.     This Consent Decree in no way limits or affects any right of entry

and inspection, or any right to obtain information, held by the United States

pursuant to applicable federal laws, regulations, or permits, nor does it limit or

affect any duty or obligation of Defendant to maintain documents, records, or other

information imposed by applicable federal or state laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

59.     This Consent Decree resolves the civil claims of the United States for

the violations alleged in the Complaint filed in this action, through the Date of

Lodging of this Consent Decree.

60.     The United States reserves all legal and equitable remedies available

to enforce the provisions of this Consent Decree, except as expressly stated in

Paragraph 59.  This Consent Decree shall not be construed to limit the rights of the

United States to obtain penalties or injunctive relief under the Act or implementing

regulations, or under other federal laws, regulations, or permit conditions, except

as expressly specified in Paragraph 59.  The United States further reserves all legal

and equitable remedies to address any imminent and substantial endangerment to

the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

61.     Defendant reserves all legal and equitable defenses to enforcement under this Consent Decree, except as expressly stated herein.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 59 of this Section.

62.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does

not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

63.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

64.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

65.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.  NOTICES

66.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
eescdcopy.enrd@usdoj.gov
Re: DOJ No. 90-5-2-1-09044/1

THOMAS A. HELPER
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, HI 96850

and

(EPA contacts)
Brian P. Riedel (Riedel.Brian@epa.gov)
Charles Aldred (Aldred.Charles@epa.gov)
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

<u>To the Hawaii Department of Health, Clean Air Branch</u>:

Manager, Clean Air Branch
P.O. Box 3378
Honolulu, HI 96801-3378
Phone: (808) 586-4200
Fax: (808) 586-4359
Email: cab.doh@hawaii.gov

<u>To Defendant</u>:

Lori M.K. Kahikina
Director
Department of Environmental Services
City and County of Honolulu
1000 Uluohia Street, Suite 308
Kapolei, Hawaii 96707
Email: lkahikina@honolulu.gov

and

Dana Viola
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, HI 96813
Email: dviola@honolulu.gov

67.     Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

68.     Notices submitted pursuant to this Section shall be deemed submitted

upon mailing or emailing, unless otherwise provided in this Consent Decree or by

mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

69.     The Effective Date of this Consent Decree shall be the date upon

which this Consent Decree is entered by the Court or a motion to enter the Consent

Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.  RETENTION OF JURISDICTION

70.     The Court shall retain jurisdiction over this case until termination of

this Consent Decree, for the purpose of resolving disputes arising under this

Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI,

or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

71.     The terms of this Consent Decree, including any attached appendices,

may be modified only by a subsequent written agreement signed by all the Parties.

Where the modification constitutes a material change to this Decree, it shall be

effective only upon approval by the Court.

72.     Any disputes concerning modification of this Decree shall be

resolved pursuant to Section IX of this Decree (Dispute Resolution), provided,

however, that, instead of the burden of proof provided by Paragraph 51, the Party

seeking the modification bears the burden of demonstrating that it is entitled to the

requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

73.     After Defendant has maintained satisfactory compliance with all

requirements of this Consent Decree, including those relating to the SEP required

by Section V of this Consent Decree, and has paid the civil penalty and any

accrued stipulated penalties required by this Consent Decree, Defendant may serve

upon the United States a Request for Termination, stating that Defendant has

satisfied those requirements, together with all necessary supporting documentation.

74.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

75.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 46 of Section IX, until 180 days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

76.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and

agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

77.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

78.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Each of the Parties agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.  INTEGRATION

79.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings,

whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

80.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.   The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## APPENDIX

81.    The following Appendix is attached to and part of this Consent Decree:  Kapaa/Kalaheo SEP, H-POWER Photovoltaic Project, dated February 27, 2015.

DATED: July 1, 2015 at Honolulu, Hawaii.



_____
Derrick K. Watson
United States District Judge

-38-

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. City and County of Honolulu, Hawaii (D. Haw.):

FOR PLAINTIFF UNITED STATES OF AMERICA:

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

HENRY FRIEDMAN
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Telephone (202-514-5268); Fax (202-616-2427)
Email: henry.friedman@usdoj.gov

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States v. City and County of Honolulu, Hawaii (D. Haw.):

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____ 4/30/15
CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

_____ 4/14/15
JARED BLUMENFELD
Regional Administrator
United States Environmental Protection Agency, Region 9

_____ 4/30/15
BRIAN P. RIEDEL
Assistant Regional Counsel
United States Environmental Protection Agency, Region 9

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. City and County of Honolulu, Hawaii (D. Haw.):

FOR DEFENDANT CITY AND COUNTY OF HONOLULU, HAWAII:

KIRK CALDWELL
Mayor
City and County of Honolulu

LORI M.K. KAHIKINA
Director
Department of Environmental Services

NELSON H. KOYANAGI, JR.,
Director
Department of Budget and Fiscal Services

DONNA Y.L. LEONG
Corporation Counsel
Department of the Corporation Counsel

# APPENDIX





TRUE NORTH

BUILDING FOOTPRINT ROTATED
200' x 700' = 140,000 SF

30 FT WIDE ACCESS
ROADWAY, 15 FT OFF
OF UTILITY

COVANTA
BLDG
130' x 150'

- 73' TO BUILDING
- 20' CLEAR SPACE OFF BUILDING
GIVES 53' WIDE ACCESS

MRF BUILDING
200' x 472.5'
85,500 SF

38 FT WIDE ACCESS
ROADWAY

SITE PLAN - PRELIMINARY
SCALE: 1" = 200'